(No. 6254

ROBERT S. DORSEY, Claimant, *v.* STATE OF ILLINOIS, Respondent.

*Opinion filed December 13, 1977.*

ROSS ARMBRUSTER, Attorneys for Claimant.

WILLIAM J. SCOTT, Attorney General; WILLIAM E. WEBBER and LAWRENCE W. REISCH, JR., Assistant Attorneys General, for Respondent.

HOLDERMAN J.

This claim arises from personal injuries suffered by Claimant while he was an inmate at Menard State Penitentiary.

The Claimant, Robert S. Dorsey, was an inmate at the Menard State Penitentiary on March 6, 1970. He was one of those assigned to work at the slaughter-house, and both he and his assailant were classed as convicts who could be trusted sufficiently to be let out of the penitentiary proper to work at the slaughter-house on the farm.

When Claimant came out of the dining room after lunch, he was struck on the left leg with an instrument which was afterwards found to be a baseball bat. As he bent over to rub his leg, he was hit on the head. The evidence is to the effect that he did not know the person

who hit him, except that his name was "Steven, Stevens, or Steve" who was also an inmate at the penitentiary and who also worked in the slaughterhouse.

The record is completely devoid of any indication of a dispute between the individuals involved in this matter and there is no evidence of any kind to show there had been an argument or fight between the two men.

The record discloses that there were between 100 and 125 inmates assigned to the farm and there were approximately eight guards.

As a result of the blow on the head, Claimant suffered rather severe physical damage and is still not completely recovered.

Claimant alleges that the State of Illinois was negligent in not having more guards present to prevent instances such as the one causing the unfortunate injury to Claimant, and he also alleges that the State should have known that the assailant was dangerous. The record indicates, however, that neither of the individuals involved had shown any propensity for violence or causing trouble. The fact that they were both assigned to work outside the walls, practically as trustees, would indicate that the prison authorities were justified in their selection of these two individuals to do the work they were doing.

The area adjoining the door out of which Claimant came and where he was struck on the head, was also used for recreational purposes where baseball and other sports were engaged in.

Claimant also alleges that the State was negligent in allowing athletic equipment, such as baseball bats, to be on the grounds where the incident took place.

The rule in the State of Illinois and other jurisdictions is that before the State can be held liabile in a situation such as the present one, the State would have had to have knowledge of the dangerous propensities of the assailant, Stevens, and guarded against him.

The following citations support the position of the State that it was not negligent in this particular case because the record is devoid of anything that would have put the State on notice that the attack, which did occur, might have occurred.

In a 1970 decision, *City of Lexington v. Greenhow, 451, S.W.2d 424, 41 A.L.R.3d 1018,* a man who was arrested by the city police was attacked by another inmate in the city jail. No officer was present at the time of the attack. There was, however, no evidence that the assailant had any propensity for violence. In denying a recovery for the injured inmate, the Court said:

"In the instant case there is no proof that appellant had any knowledge of Hamilton's violent propensities. . .

The jailer is not an insurer of the safety of the prisoners under his control. The city having no reason to anticipate the violent outburst on the part of Hamilton, it is our opinion that the plaintiff failed to make out a case of prima facie negligence. Had Hamilton manifested any roughness or violence prior to his attack upon appelle, the result would be different."

In a 1957 decision, *Justice v. Rose, 102 Ohio App. 482, 2 Ohio Op. 2d 39, 144 N.E.2d 303,* an action was brought against a sheriff for the death of a mental patient who was the victim of assault by a fellow prisoner in jail. The Court stated as follows:

"In all the cases where liability of the officer has been sustained for injuries inflicted by another prisoner the facts show a willful and known neglect, in that the officer failed to prevent violence, which was known, or in the exercise of ordinary care should have been known, by him.

In the instant case the alleged acts and omissions of negligence are of a different character. There is no allegation that the sheriff knew of, or had reason to anticipate any trouble in the jail or danger of injury to Clair Justice; there is no allegation that sheriff Rose knew that Carl Baldwin was

a vicious man, nor is there an allegation of any other facts or circumstances from which it may be inferred that the sheriff had reason to take extra precautions for the protection of the decedent.

The sheriff cannot be charged with negligence in failing to prevent what he could not have reasonably anticipated. The authorities unanimously hold that an officer owes to prisoners in his custody and control the duty to exercise ordinary care for their protection. But in the absence of an allegation of facts sufficient to show that the officer had reason to anticipate violence and that he failed to prevent it, there can be no liability. Had the situation been reversed and had Baldwin, a common prisoner, been killed by Justice, an insane prisoner, a different question as to liability would be presented."

In the case of *Fleishour v. U.S.* 244 F. Supp. 762 (D.C.., Ill.) plaintiff, while asleep, was struck with a fire extinguisher by another prisoner. The issue was whether it was negligent to place approximately 40 prisoners, including many with assaultive records, in a single dormitory room with various objects present which could be used as weapons. The Court held that the defendant was not negligent. The Court said at page 767:

"A number of penologists of long and extensive experience in both the Federal and State prison systems testified that when prisoners are transferred from an institution where they have not made a satisfactory adjustment and have run into conflict with the guards and other authorities, it is accepted practice to give them an opportunity to make a fresh start at the transferee institution and not treat them as troublemakers unless they warrant it by their conduct at that institution. Accordingly, they expressed the opinion that the dormitory sleeping arrangements here involved were reasonable.

These same experts pointed out that all aspects of prison life which seek to encourage rehabilitation and responsible conduct by prisoners inevitably involve calculated risks. Most of those incarcerated have greater or lesser assaultive tendencies and the only certain way to insure against prison episodes is by complete isolation which is not only physically very difficult, if not impossible, but also least likely to induce positive attitudes and the rehabilitation of persons so treated.

Accordingly, it is, we are told, standard practice in modern penal institutions to take calculated risks in various aspects of prison life, housing, work, recreation, religious worship and others, so that prisoners may learn to get along with other persons as part of the rehabilitation process. The result is, from time to time, there occurs an episode such as that here involved in which the gamble is lost and another prisoner is injured.

(5) It was the opinion of all the experts who testified that the officials at

McNeil had acted reasonably and in a manner consistent with accepted prison practices at the time here involved. In the face of such testimony, the Court cannot conclude that plaintiff has established by a preponderance of the evidence that these officials were negligent and judgment must therefore be entered for the defendant."

The record clearly indicates there was nothing in the records of either individual that would cause the State of Illinois to anticipate or foresee an assault by the assailant.

The State is not an insurer of the safety of persons under its control.

It is the opinion of this Court that the Claimant has failed to prove the State was negligent and an award is hereby denied.