(No. 85-CC-1868–)

ELLIS HUNT, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed December 1, 1986.*
*Order on denial of rehearing filed August 25, 1987.*

ELLIS HUNT, *pro se*, for Claimant.

NEIL F. HARTIGAN, Attorney General (MICHAEL TAYLOR, Assistant Attorney General, of counsel), for Respondent.

OPINION

RAUCCI, J.

In this case Claimant, Ellis Hunt, age 49, an inmate at Menard Correctional Center, seeks damages from the State for injuries received by him on January 12, 1985, when he was attacked by another inmate and struck on the head twice with a broom handle.

On the date and time of the incident in question, the following facts have been admitted by Respondent pursuant to Claimant's "Request to Admit":

1. Cellhouse rules and regulations required the security staff to supervise all inmate movement at the prison.

2. A Protective Custody Unit existed at the prison for the purpose of protecting inmates from other inmates.

3. Members of the security staff were required to check all cell doors when inmates were moving to and from their cells for the purpose of making certain that all doors were secure.

4. Respondent's agents were required to take appropriate steps to provide security for inmates assigned to the Protective Custody Unit at the prison.

5. Regulations of the prison require that Respondent's agents protect inmates assigned to the Protective Custody Unit.

6. Claimant was assigned to the Protective Custody Unit because Respondent's agents had determined that Claimant was in need of protection from other inmates.

On the date in question, Claimant was attacked by inmate Johnny Brown around 7:15 to 7:30 p.m. Claimant was taking lifer food orders, which is his job at the prison.

Prior to the date of the attack, Claimant's antagonist had threatened Claimant. Claimant reported this to a guard. The guard warned Claimant not to be present on the gallery through feeding time or movie time. Claimant testified that he followed this admonition and went to the gallery at 7:15-7:30 p.m. taking lifer orders. Claimant testified that his antagonist was out of his cell without explanation and walked up to Claimant and struck him in the head with a broom.

Claimant sustained lacerations on his head, which were sutured. The lacerations healed satisfactorily. Claimant claims that the head lacerations caused him to have blood pressure problems.

Respondent argues that the State is not an insurer of the safety of inmates under its control. (*Dorsey v. State* (1977), 32 Ill. Ct. Cl. 449, 453.) In the case at bar, the uncontradicted evidence demonstrates that Claimant advised the agent of the State shortly before he was

injured of the threat posed to him by prisoner Johnny Brown.

Second, the State argues that Claimant's injury was a result of his own fault and negligence. The evidence in this case establishes that Claimant followed Respondent's suggestion to remain off the gallery in question while prisoners were going to and from meals and movies. The presence of Claimant's antagonist on the gallery at the particular time the Claimant was attacked was unexplained and, according to the uncontradicted evidence, in violation of administrative rules and regulations.

There is no question that Claimant sustained serious head lacerations, which caused him considerable pain and discomfort. Medical records submitted by Respondent subsequent to the hearing in response to Claimant's motion to produce do not permit the conclusion that Claimant's blood pressure problem is in any way related to the lacerations sustained on his scalp as a result of the attack by inmate Johnny Brown.

It is therefore ordered, adjudged and decreed that Claimant is awarded $750.00 in full and complete satisfaction of this claim.

## ORDER ON DENIAL OF REHEARING

RAUCCI, J.

This Court, having considered Respondent's petition for rehearing, Claimant's response thereto and being fully advised in the premises, finds:

1. Respondent maintains that it was not served with the Claimant's "Request to Admit" which was filed on March 6, 1985.

2. Reading the record, we can see how confusion could have occurred. However, the Commissioner specifically called to the Attorney General's attention the existence of the "Request to Admit." See the transcript of proceedings for December 2, 1985, at page 21, where the Commissioner Rath discussed the request as "consisting of ten paragraphs." The Assistant Attorney General then asked to see the document.

3. Additionally, to this date, no response or denial to the "Request to Admit" has been filed.

It is therefore ordered that the petition for rehearing is denied.