(No. 88-CC-4554–)
Casey Bock, Claimant, *v*. The State of Illinois, Respondent.

*Order filed March 22, 1991.*

Casey Bock, *pro se*, for Claimant.

Roland W. Burris, Attorney General (William Conroy, Assistant Attorney General, of counsel), for Respondent.

OPINION

Sommer, J.

The Claimant, an inmate with the Illinois Department of Corrections, seeks judgment against the Respondent, State of Illinois, for the sum of $30,000.00.

At the hearing in this cause, the Claimant testified that on December 19, 1987, at approximately 10:30 p.m.,

he was walking down the hallway intending to go to the "day room." The Claimant was with an inmate named Herb Hagan. Hagan was accosted by a group of inmates, one of whom attacked Hagan. In attempting to escape, Hagan ran into the Claimant and the Claimant was knocked to the floor. When the Claimant tried to get up, another unknown inmate kicked the Claimant in the side of his head. The Claimant testifies that he sustained a broken jaw from being kicked.

After the incident, a guard advised the Claimant to go to the Health Care Unit. Upon arriving at the Health Care Unit, the Claimant saw a nurse and advised her that he thought his jaw was broken. The Claimant testified that the nurse checked his eyes, ears, nose and mouth and told him, "you can go." No physician was present. The Claimant contends that he requested that the nurse take x-rays of his jaw and that she refused, stating that the doctor would take the x-rays when he came in. The Claimant was not advised by the nurse that there was no doctor present at the time. The nurse who examined the Claimant prescribed no treatment for him, except that he was apparently given aspirin and some Motrin. The Claimant states that he received a ticket as a result of the incident and was escorted to segregation. The Claimant contends that he advised the guards who escorted him to segregation concerning his belief that he was injured. The Claimant told the officers working in the segregation unit that he felt his jaw was broken and that he needed to see a doctor. The Claimant contends that the guards told the Claimant that the doctor wouldn't be in until the following week (Monday).

The following morning, the Claimant saw the same nurse again. On that occasion (Sunday morning), the Claimant advised the nurse that the pain killers he had received weren't doing anything "to kill the pain," and

that the Claimant needed a stronger pain medication. The Claimant was advised that no stronger medication could be prescribed. This second visit with the nurse was at 5:00 a.m. At that time, the nurse advised the Claimant that she had no idea when the doctor "was going to come in." The Claimant had never had previous facial injuries. The Claimant was unable to sleep after the injury and his face was swollen.

The following morning the Claimant again saw a different nurse from the Department of Corrections. The Claimant again advised the Respondent's agent that he needed stronger pain medication. The nurse reiterated that she could not give the Claimant stronger pain medication, but advised the Claimant that a physician was scheduled to see the Claimant that day. The Claimant advised the second nurse, as well as the first nurse, that he thought his jaw was broken. That same day at 1:45 p.m., the Claimant was taken to see the doctor. His jaw was swollen.

The Claimant saw Dr. Feinerman at 1:45 p.m. and gave him a history of what had happened. The doctor ordered x-rays which revealed that the Claimant's jaw was broken in two separate places. The Claimant again asked for stronger pain medication, but only received the same medication that he had received previously. The Claimant was returned to his cell for approximately an hour when he was escorted to see an oral surgeon off the grounds of the prison. The oral surgeon wired the jaw. Metal bands were put on the Claimant's teeth and they were wired. The oral surgeon made no comment concerning the delay in treating the Claimant. The Claimant was returned to an infirmary at Lincoln Prison where he remained for approximately one month. The Claimant saw the oral surgeon from time to time, who

changed the bands on his jaw "every so often." The bands remained on the Claimant's jaw for a month and a half during which time he saw the oral surgeon regularly.

The Claimant contends that he was in significant pain for approximately one month. After the Claimant's jaw was wired, he was taking liquid Tylenol with Codeine instead of Motrin. He took the liquid Tylenol, which helped him, approximately a month and a half until he was discharged from the oral surgeon's care. The Claimant testified that he was never advised by the oral surgeon or any other person practicing the healing arts, that he had sustained injury or damage as a result of the failure on the part of the Respondent's agents to secure earlier medical attention for his jaw.

At the hearing, the Claimant contended that the attack upon the Claimant and his friend was through the fault and neglect of the Respondent for the reason that there had previously been several violent offenses in this part of the prison, and there were insufficient staff present at the time of the attack in order to have prevented the attack. The security that was present on the wing at the time the Claimant was injured, was the same security that had been present for the wing for an indefinite period of time prior to the injury. To the Claimant's knowledge, no one had ever complained that there was inadequate security. The Claimant contends there should have been one more officer present "on the wing," and that if there had been such additional officer, his injury would have been avoided. Further, the Claimant contends that the failure of the Respondent's agents to provide prompt medical treatment caused him damage beyond that which he would have suffered as a result of the attack on his person. The Claimant testified

that the nurse should have called a doctor so that the Claimant could have been admitted to a hospital where he would have received proper pain medication until he could see the oral surgeon. Accordingly, the Claimant testified that he could have avoided the pain that he was in between the night of the incident and the time when he was treated by the oral surgeon on Monday.

With respect to the nature and extent of the Claimant's injuries, the Claimant contends that he received nerve damage because he now has a numb feeling on the right side of his lip and right chin. He states that now when he drinks hot liquid, it feels as though the liquid is dripping down his chin when it is not. When he shaves on the right side of his chin, he feels certain sensations that he did not feel previously. The Claimant also contends that there was damage to his "eye tooth" and that it has "a funny feeling to it."

An evidence deposition of Dr. Feinerman was taken by the Respondent. Dr. Feinerman testified that he had a specialty in internal medicine. He examines inmates at Logan and Lincoln and is at one prison or the other every day. Dr. Feinerman testified that he has had occasion to see and diagnose approximately 20 broken jaws. Dr. Feinerman does not treat broken jaws, but makes referrals to an oral surgeon. In the case of the diagnosis of a broken jaw, Dr. Feinerman would normally prescribe an analgesic pain killer. The records in the Claimant's case reveal that Dr. Feinerman saw and examined him December 21, 1987. Dr. Feinerman testified that when he saw the Claimant, he ordered x-rays which revealed that the Claimant had a fractured jaw and he prescribed Motrin and referred the Claimant to an oral surgeon. Dr. Feinerman testified that the circumstances under which the nurse had seen the Claimant on the day of the injury, would "not

necessarily" require the nurse to call a doctor for further advice. Dr. Feinerman testified that he concurred with the action that the nurse took on December 19, when she first saw the Claimant after the injury. Dr. Feinerman explained that there was no evidence of an injury of such urgency as to require the presence of a doctor. In answer to a hypothetical question, Dr. Feinerman testified that if he had seen the Claimant on the date of the injury at the same time that the Respondent's nurse saw the Claimant, he could not have done anything more for the Claimant than was done by the nurse. Dr. Feinerman testified that it would be unusual, once a broken jaw was diagnosed, to have the patient wait 36 hours "but it doesn't affect the outcome of the problem, no." Dr. Feinerman concluded in his medical opinion based on his experience and on a review of the medical records of the Claimant, that the nursing staff at Logan gave the Claimant sufficient and adequate treatment for the injuries of which he was complaining.

The Claimant's theory that he was afforded improper or inadequate medical care cannot be sustained. The evidence of Dr. Feinerman substantially refutes the Claimant's assertions that he was entitled to additional or different medical care. (*Wollard v. State* (1980), 34 Ill. Ct. Cl. 198; *Davis v. State* (1987), 39 Ill. Ct. Cl. 185, 191.) In order to recover on a theory of inadequate medical care, the Claimant must first establish a breach of duty through expert testimony to establish that the Respondent deviated from applicable standards of care unless such inadequate care is obvious. The Court finds inadequate care is not obvious in this case; and the Court must rely on expert testimony. Dr. Feinerman essentially testified that the nurse had taken the same steps he would have in order to stabilize the Claimant's condition; and that the long term result was

not affected by the delay. No evidence was offered or questions asked whether a hospital would have administered the same pain killers or whether an oral surgeon and support staff would even have been available on Saturday night or Sunday. The Court finds that there is no competent evidence that the pain or seriousness of the injury was exacerbated by the State's treatment.

With respect to the Claimant's contention that the Respondent should answer in damages for the attack on the Claimant, the case of *Dorsey v. State* (1977), 32 Ill. Ct. Cl. 449, is controlling. In that case, no liability on the part of the Respondent was found due to the fact that the attack on the Claimant was without warning, and was committed by a man that the Claimant barely knew. In other words, the State could not foresee the assault. The Claimant testified that there had been problems in the area of the assault, but he knew of no complaint to the prison Administration about such nor was he specific as to the nature and incidence of such problems. The Claimant makes no allegation that the State could have known that he or inmate Hagan were to be singled out for assault. Thus, we find that the Claimant has not shown that the State had sufficient notice so that it could have foreseen an assault either at the location involved or against the Claimant and inmate Hagan. Therefore, as in the *Dorsey* case, *supra*, the State was not negligent. Therefore it is hereby, ordered that this claim be denied.