(No. 87-CC-4172- )

LUCIOUS HAYES, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed May 23, 1995.*

ROBERT M. HODGE, for Claimant.

JIM RYAN, Attorney General (STEVEN SCHMALL, Assistant Attorney General, of counsel), for Respondent.

## OPINION

EPSTEIN, J.

This is a prisoner's negligence claim against the State, alleging negligence by the Department of Corrections ("DOC") resulting in physical injury to the Claimant's eyes. The case was tried before Commissioner Sternik,

and is before the Court for final decision on the trial record and the Commissioner's report.

The facts surrounding the incident that caused the Claimant's injury are largely undisputed. On the night of March 21, 1987, the Claimant was working in the boiler room at the Vandalia Correctional Center with another inmate, John Snyder, clearing ash from two of the prison's 11 coal-fired boilers without supervision and without protective glasses. The supervisor, Mr. Keeling, was away from the two inmates at the time in his office. Two other inmates were hauling the ash away.

The procedure was to cool the ash before inmates removed it. The proper procedure was to drop the grates on the side of the boiler, allowing ash to fall into a pit, where it was allowed to cool down. The ash was then shoveled from a pit beneath the boiler and loaded by shovel into wheelbarrows. (The supervisor, Mr. Keeling, testified that he trained all inmates in this procedure and that it is not usually hazardous; the Claimant denies being taught this procedure.)

The supervisor testified that the Claimant had cleared ash for approximately six weeks prior to the March 21, 1987, incident. He said Claimant had performed all the requirements for clearing ash before that date, and that safety goggles were available for use but not required, and were sometimes used by inmates on this duty. He also testified that his supervisor's office was upstairs and that he could see the back side of the boiler from the office. At the time of the incident, the supervisor said he was coming down to the boiler room when he was informed of an accident. The Claimant told him he had something in his right eye and pain.

Claimant testified that immediately before the accident he was helping break up cinder in the boiler and

Snyder, the other inmate, was raking it out; that Snyder turned a valve in the boiler which created smoke; that ash quickly filled the boiler room; and that Snyder then turned on a fan two or three feet from the boiler (apparently attempting to clear the air). Claimant testified that ash was blown into his right eye. Claimant said that inmate Snyder had been on this job longer than he and, as the senior ash man, decided procedures. Claimant also testified that the supervisor had previously ordered that the ash be taken out immediately that evening.

After the incident, the supervisor assisted Claimant wash his eye and administered eye rinse. Claimant still complained of eye pain. The supervisor took him to the prison hospital, where a nurse could not observe anything in his eye. After treatment, Claimant went back to work with an eye patch over his right eye.

The next morning Claimant still complained of pain and again was taken to the prison hospital, where the duty nurse said he had a corneal abrasion. She authorized him to be taken to Centralia hospital, where Dr. Desai treated him with pain killer and authorized further treatment at Mt. Vernon hospital. Claimant saw Dr. Desai seven times over the course of his treatment from March 22, 1987, to May 12, 1987. Claimant's own doctor, Dr. Rosenberg, examined him on May 11, 1988; his doctor's letter was admitted into evidence (Claimant's Exhibit No. 1). Dr. Rosenberg stated that while one eye did tear abnormally, this and other defects in Claimant's eyes were probably not related to the work injury. His letter also states that there were no remnants of the injury of March 1987, but also stated that there was a syndrome present that could occur following a corneal abrasion but also could derive from other injury or disease. He could not say if this syndrome (a shedding of a small area of cells on the external surface of the cornea)

was related to or caused by the injury of March 1987. Claimant also submitted an affidavit by inmate Snyder that was supportive of Claimant's testimony.

Our Commissioner found the supervisor to be a credible witness and found that he did in fact teach the proper procedure for clearing ash to both inmates, a finding that we adopt. It is also clear, as our Commissioner found, that the inmates, particularly inmate Snyder, were not following the proper procedure and knew or should have known the correct procedure.We adhere to those conclusions, but they do not dispose of this claim. We have found two aspects of this case that constitute negligence on the part of the DOC and thus the State.

First, a fan located two or three feet from a boiler being unloaded of hot ash should not be operable by inmates, however well "trained" or instructed, and should be operable only by or at least in the presence of a responsible supervisor. Although the other inmate was obviously wrong, as well as wrongheaded, to turn on the fan in this situation, he should never have been placed in a position of being able to take such unilateral action. His improper response was at least partly the responsibility of the DOC and reflects inadequate supervision. The evidence also demonstrated that the supervisor, even assuming his ability to observe the entirety of the ash-removal operation from his office, was not close enough to intervene in case of mistake, and was not close enough to prevent inmate Snyder from operating the fan even had he seen him do it (which is not claimed).

Second, although safety glasses were undisputedly available to the inmates working on this hazardous assignment, the Respondent acknowledged that neither the prison work rules nor the supervisor mandated that inmates wear glasses during ash cleaning. This too was negligent.

In *Dorsey v. State* (1977), 32 Ill. Ct. Cl. 449, this Court held that a finding that the State was negligent requires actual or constructive notice to the State, which can be met, among other ways, by a showing of foreseeability as to the particulars. Such foreseeability is apparent in this case with respect both to the operation of the fan and as to the failure to wear safety glasses when handling potentially hot ash.

In *Hughes v. State* (1984), 37 Ill. Ct. Cl. 251, it was held that because of the unique relationship between the State and a prison inmate, the State has a duty to provide safe conditions and adequate supervision for inmates to perform assigned tasks. In the present case, the Claimant has demonstrated that the State failed in both elements of this duty on the March 1987 occasion of the Claimant's injury. The State clearly required the Claimant to work in a dangerous workplace (which is not in itself improper) without supervision and without providing or requiring adequate safety precautions (providing as to the fan; requiring as to the safety glasses).

We therefore find the State, through its Department of Corrections, negligent in providing an unsafe work situation and failing to supervise it. However, we also accept the State's contention that the Claimant was guilty of substantial comparative negligence that must be taken into account in making an award. This Claimant was negligent himself in at least two ways.

First, he knew that the other inmate, Snyder, was neither a supervisor nor held any other official authority on the work detail and thus had no authority over him irrespective of prisoners' own self-imposed hierarchy, which has no legal significance whatever. Claimant thus followed Snyder's directions and methods at his own risk.

Second—and more importantly—and irrespective of the State's failure to require these inmates to wear protective glasses, the Claimant was seriously negligent in not electing to wear protective glasses while shoveling potentially-hot ash when such glasses were available to him, as is undisputed. Any reasonable adult should know better. And absent a showing that the Claimant is somehow mentally disabled or incompetent, not alleged here, that is the standard to which an adult, even a prisoner, is held under our law. The Claimant did not comport himself with due regard for his own safety, and accordingly must be held to be comparatively negligent in a manner substantially contributing to his injury. We find the Claimant 50% at fault in the comparative negligence causing his injury.

The damages to be awarded are more troublesome in this case than the liability analysis. No permanent injury was proven, and the short-term injury, while undoubtedly painful and bothersome, did not generate out-of-pocket expenses for the Claimant, as the State paid for his initial medical care. After review of the limited damages evidence submitted, and giving due credence to the medical testimony and the Claimant's testimony, we find that the appropriate compensatory damages for the Claimant's injury is $5,000.

Accordingly, we award the Claimant $5,000 reduced by 50% comparative fault. Claimant is awarded the sum of $2,500.

Ordered: judgment is entered for Claimant Lucious Hayes against the Respondent in the amount of $2,500.